| | |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| *versus* | § CASE NO. 1:16-CR-96(9) |
| | § |
| LOLA MICHELLE JACKSON | § |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Lola Michelle Jackson's ("Jackson") Motion for Early Termination of Supervised Release (#398), wherein she seeks early termination of her three-year term of supervised release. United States Probation and Pretrial Services for the Eastern District of Texas ("Probation") submitted a report in which it defers to the position of Jackson's supervising probation officer in the Western District of Louisiana who does not oppose the motion. The Government is also unopposed to the motion. Having considered the motion, the Government's position, Probation's report, the record, and the applicable law, the court is of the opinion that Jackson's motion should be denied.

I.   Background

On November 3, 2016, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Jackson along with eight co-defendants with Conspiracy to Possess with Intent to Distribute fifty (50) grams or more of methamphetamine "actual," in violation of 21 U.S.C. § 846. Jackson pleaded guilty to the charged offense on March 3, 2017, pursuant to a non-binding plea agreement. On November 2, 2017, the court sentenced Jackson to seventy-eight months' imprisonment, followed by a three-year term of supervised release. Jackson completed her term of imprisonment on January 18, 2022, and began serving her term of supervised release in the Western District of Louisiana. After serving only seventeen months

of her three-year term of supervised release, Jackson seeks early termination of the remaining balance.

Jackson asks the court to terminate her supervised release, ostensibly because she has been rehabilitated and "was forced to quit a previous job because she was unable to travel like the rest of the crew." Jackson has reportedly maintained her current, full-time job since then. As reflected in her Presentence Investigation Report ("PSR"), Jackson was not employed at the time of her arrest and had not worked since August 27, 2015, when she was terminated from her employment with the Vernon Parish Sheriff's Office in Leesville, Lousiana, when she refused to submit to a random drug test. Jackson further contends that she has completed substance abuse treatment, has maintained sobriety, attends church on a regular basis, and has re-established relationships with her family. Jackson also asserts that the early termination of her supervised release would "be an efficient use of the scarce resources of the United States Probation Office."

II.     Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1275 (2019). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although Probation and the Government do not oppose early termination, this fact, standing alone, is insufficient to justify granting Jackson's request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and probation did not oppose early termination, that fact, standing

alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228, 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01,

2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *United States v. Guidry*, No. 3:19-CR-332-S, 2020 WL 908542, at *1 (N.D. Tex. Feb. 13, 2020), *adopted by* No. 3:19-CR-0332-S, 2020 WL 906303 (N.D. Tex. Feb. 25, 2020); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp.2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2

5

(D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89).

Courts have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family. *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs); *United States v. Gardner*, No. 03-CR-194, 2012 WL 4864997, at *1 (E.D. Wis. Oct. 12, 2012) (travel out-of-state to work as a promoter and become a professional boxer). A defendant's failure to provide concrete information "demonstrating lost potential business opportunities due to [her] travel restrictions" typically results in denial of [her] request for early termination of supervised release, particularly where Probation already permits domestic travel with prior approval. *See United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (travel outside the district

for employment purposes, where Probation had previously granted every domestic travel request the defendant submitted); *see also United States v. Coleman*, No. 15-543, 2021 WL 4940979, at *3 (E.D. Pa. Oct. 22, 2021) (travel for business and charitable work, where the defendant failed to provide "specific examples" of instances where he was "denied permission to travel . . . for purposes that are legitimately related to his professional or charitable endeavors"); *United States v. Black*, No. 10-CR-303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013) (travel for business reasons, where the defendant "report[ed] no specific instance when the travel-approval process has had a concrete negative effect on his business"). In this instance, the court finds that Jackson's purported desire to travel for work purposes is not new or unforeseen. Yet, as confirmed by Probation, there is no indication that Jackson has ever requested permission to travel beyond the geographical area permitted by her conditions of supervised release. *See Lynn*, 2022 WL 2446328, at *2.

Courts have routinely denied requests for early termination of supervised release where a defendant claims that early termination will improve her employment prospects without providing concrete support for this contention. *See United States v. Lagone*, No. 10-CR-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (denying early termination in part because the defendant "merely generally contended that early termination would bolster his job prospects" and did not provide more detailed information); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1-2 (S.D.N.Y. Aug. 3, 2015) (refusing to grant early termination where the defendant failed to "establish[ ] that the terms of his supervised release pose[d] any hazard to his employment" and did not "explain[ ] how the terms of his supervised release [had] 'even an intangible impact' on his employment" (quoting *United States v. Black*, No. 10 Cr. 303-A, 2013

WL 2527371, at *3 (W.D.N.Y. June 10, 2013))); *United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (determining that the defendant's circumstances did not warrant early termination in part because he "advanced no basis for his contention that 'the restrictions and general weight of supervised release' impede[d] his employment"); *United States v. Ogele*, No. CR 06-546 PJH, 2012 WL 6035537, at *2 (N.D. Cal. Dec. 4, 2012) (refusing to grant early termination in part because the defendant "offer[ed] no details of prospective business opportunities" and failed to "explain why fulfilling his term of supervised release would inhibit his ability to make a reasonable living"). In fact, a defendant's disclosure of a legitimate "potential employment opportunity" is not necessarily sufficient to warrant early termination. *See United States v. Silverio*, No. 99-CR-1044 (LDH), 2022 WL 493177, at *4-5 (E.D.N.Y. Feb. 17, 2022) (concluding that the defendant's participation in the "pre-employment process" with a prospective employer did not outweigh the court's other considerations under the Section 3553(a) factors).

Here, Jackson fails to explain sufficiently how the current conditions of her supervised release limit her employment opportunities. She merely states that she had to take a lower paying position after she was forced to quit her previous job because she was not able to travel like the rest of the crew. Probation clarifies that this occurred while Jackson was on home confinement with location monitoring and her travel was restricted by the Federal Bureau of Prisons, not while she was on supervised release. Jackson does not demonstrate that her term of supervised release forced her to quit her job or that Probation would not accommodate reasonable travel requests. Similarly, Jackson does not explain how early termination of her supervised release will enable her to advance in her employment. Accordingly, the court finds that Jackson's nebulous claims

that early termination will enhance her employment opportunities provide no basis for ending her term of supervised release early.

As for Jackson's argument that continuing her supervised release will impose an unwarranted financial burden on Probation, the court notes that the cost of a defendant's continued supervision is not among the Section 3553(a) factors that must be considered when deciding a motion for early termination of supervised release. *See* 18 U.S.C. § 3553(a). The fact that supervised release requires the expenditure of government funds is certainly not a "new or unforeseen circumstance." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89). While some courts have considered the financial cost of supervision, such an argument does not necessarily merit an early termination of supervised release. *See, e.g.*, *United States v. Mathis*, 221 F. Supp. 3d 1131, 1134 (S.D. Iowa 2016) (declining to terminate the defendant's supervised release where the defendant contended, among other arguments, that the "annual cost to taxpayers" of his supervision was a "needless expense"); *United States v. Sussman*, No. 08-0891 (DRD), 2015 WL 132543, at *2 (D.N.J. Jan. 8, 2015) (denying early termination despite the defendant's assertion that granting his motion would "reduce the costs imposed on the government"). Accordingly, the court finds that the cost of Jackson's supervision does not warrant early termination.

Jackson's offense of conviction stems from her participation in a drug trafficking conspiracy involving the distribution of 50 grams or more of methamphetamine "actual." In March 2016, law enforcement officers seized 945.9 grams of methamphetamine "actual" that was being transported from Houston, Texas, to Jackson's residence in Louisiana which she shared with her husband, Codefendant John Earl Jackson ("John"). Jackson also distributed a total of 55.9

grams of methamphetamine to a confidential informant at her residence on four occasions in May and June 2016. The execution of a search warrant at Jackson and John's residence and shop in June 2016 resulted in the discovery of firearms, a stolen vehicle, and an additional 72.8 grams of methamphetamine. Jackson was found personally accountable for the distribution of at least 1.58 kilograms of methamphetamine "actual."

In addition, it appears that Jackson has not been fully candid in her conduct in this proceeding. The record reflects that John, Jackson's husband, who was also a participant in the drug trafficking-conspiracy, pleaded guilty to his role in the offense and was sentenced to 262 months' imprisonment. At sentencing, John's base offense level was increased by 2 levels for obstruction of justice based on his threatening a witness on August 19, 2016. According to his PSR: "The complaining victim immediately reported the defendant's confrontation to law enforcement authorities. He said the defendant drove past the victim's residence twice, stopping the second time and telling the victim he was 'going to get' the victim because the victim had 'ratted' on him." John's objection to the enhancement was overruled by the trial court, and his appeal of his conviction and sentence in which he raised this objection was later dismissed by the United States Court of Appeals for the Fifth Circuit as frivolous. John subsequently filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody in which he again challenged his conviction and sentence. On May 16, 2019, while John's habeas petition was pending, Jackson filed a document entitled Unsworn Declaration, stating in part:

> 1. On the date August 19, 2016, my husband, John Earl Jackson, and I were enjoying a day at Annocco Lake from approximately 10:00 a.m. until approximately 6:30 p.m.

>    2.    During the time at the lake my father-n-law [sic], Kevin Jackson, called concerning the police coming to his house regarding an alleged threat my husband supposedly made to someone.
>
>    3.    During the time we were at the lake my husband never threatened or attempted to harm anyone.

Interestingly, in his objections, John did not deny making a threat. Instead, he contended that the threat was unrelated to his criminal case and therefore did not obstruct justice. He stated: "This alleged threat was made by the defendant to his first cousin, Calvin Jackson, in response to the arson of the defendant's shop while the defendant was incarcerated for this drug conspiracy." In this instance, it appears that after she pleaded guilty, was sentenced, and was serving her sentence, Jackson attempted to obstruct justice by filing her Unsworn Declaration in an effort to influence the court and obtain a favorable outcome in her husband's habeas proceeding. John's motion to vacate, set aside, or correct sentence was subsequently denied and dismissed on August 25, 2021, and he did not file an appeal.

Under the circumstances, the court finds that Jackson's post-release conduct does not warrant early termination of her supervised release. Although Jackson provides the court with a list of several commendable achievements and goals, she identifies no new or exceptional circumstances or needs. It appears that Jackson has a history of substance abuse, including regularly using methamphetamine on the weekends, according to her PSR. Thus, she would likely benefit from continued supervision. Additionally, Jackson has served only seventeen months of her three-year term of supervised release. Although Jackson appears to be on the right track, the court believes that completion of her full term of supervised release appropriately reflects the seriousness of her offense, deters future criminal conduct, and provides needed structure for her continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4 (holding that the serious nature of

the defendant's crimes and his history and characteristics significantly outweighed his actions after his release from prison). The court is of the opinion that Jackson's sentence, including the three-year term of supervised release, was appropriate at the time of sentencing and remains so. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).

III. Conclusion

Accordingly, Jackson's Motion for Early Termination of Supervised Release (#398) is DENIED.

SIGNED at Beaumont, Texas, this 5th day of July, 2023.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE